

**AGREEMENT
FOR
INMATE MEDICAL SERVICES
BRISTOL COUNTY SHERIFF'S OFFICE**

THIS AGREEMENT  made and entered into this 6th day of December, 2000, by and between Bristol County, a political subdivision of the Commonwealth of Massachusetts acting by and through its Sheriff and County Commissioners but without personal liability to them (hereinafter "Sheriff") and **Prison Health Services, Inc.**, a Delaware corporation with a usual place of business located at **105 Westpark Drive, Suite 300, Brentwood, TN  37027** (hereinafter "Contractor"or "Provider"), duly authorized to conduct business in the Commonwealth of Massachusetts.

**WITNESSETH:**

WHEREAS,  the Sheriff has an obligation to provide necessary comprehensive medical services to persons who are inmates, detentioners, or prisoners of the County of Bristol's correctional institutions; and

WHEREAS,  the Sheriff has conducted a public procurement pursuant to *M.G.L. c. 30B* to secure such services; and

WHEREAS,  the Provider has submitted a proposal in response to the Sheriff's Request for Proposals and said Proposal has been selected as the most advantageous by the Sheriff; and

WHEREAS,  the Provider is willing to be awarded the Bristol County inmate medical services contract and to provide such services to the Sheriff;

NOW THEREFORE,  the parties hereto, intending to be legally bound, hereby covenant and agree as follows:

1.    **GENERAL SCOPE OF SERVICES**

Provider, for and in consideration of the compensation hereinafter set forth, convenants and agrees to provide professional comprehensive health services to all inmates, detentioners or prisoners confined in the correctional facilities of the Bristol County Sheriff's Office, including but not limited to all types of medical, mental health, dental, laboratory, pharmaceutical, hospitalization/in patient care, outpatient/medical clinic care and physician specialty care in accordance with the specifications and terms contained in the Sheriff's Request For Proposal and Provider's Proposal.  Additionally, Provider agrees to provide emergency medical services to Sheriff's Office staff and visitors to the extent set forth in the Sheriff's Request For Proposal and Provider's Proposal.  Said Request For Proposals and Provider's Proposal, copies of which are attached hereto, are hereby incorporated herein by reference and made a part of this Agreement.

2.    **OTHER CONTRACT DOCUMENTS**

In addition to this Agreement, the Sheriff's Request For Proposals and Provider's Proposal, the documents hereinafter referred to are hereby incorporated herein by reference and made a part of this Agreement and shall be referred to as "Other Contract Documents." The "Other Contract Documents" shall consist of the publication for the Request for Proposals, certificate of notice of publication, and the minutes of the Bristol County Commissioners held on *November 14, 2000* awarding the contract set forth herein.

3.    **PERFORMANCE BOND**

Provider agrees to procure and submit to the Sheriff a performance bond in the amount of One Hundred Thousand Dollars ($100,000.00).

The bond shall be issued by a surety company licensed or authorized by the Massachusetts Division of Insurance.

4.    **PROVIDER PERFORMANCE PENALTIES**

A.    Provider shall insure that all correctional facilities under the control of the Bristol County Sheriff's Office shall be accredited by the NCCHC. A Ten Thousand Dollar ($10,000.00) penalty shall be assessed against provider which it shall pay to the Sheriff for each facility that fails to maintain NCCHC accreditation during the term of this Agreement.

B.    A Staffing penalty of one hundred ten (110%) percent of position salary will be assessed by Sheriff against Provider on all positions not staffed for a period of one month (four weeks). This penalty shall represent one hundred ten (110%) percent of the total compensation package (including salary and benefit packages) for all positions called for under this Agreement. The staffing penalty will be assessed each day until the position is filled. The filling of vacant positions with staff defined in the section entitled "Agency Utilization Adjustment Section" of the Sheriff's Request for Proposals shall not be an acceptable avoidance of the staffing penalty. The filling of a vacant position with per diem staff or the services of an independent contractor shall not be deemed a vacancy for the purposes of this paragraph and Provider will not be assessed a staffing penalty under such circumstances. Provider shall provide Sheriff with a list of all positions and/or job titles of its on-site personnel and the monetary value or total of all positions and/or job titles of its on-site personnel and the monetary value or total of each such position's salary and benefits package(s). Provider shall notify the Sheriff of any changes or

3

modifications in the positions' salary and/or benefits packages during the term of this Agreement.

C.     The Sheriff, or its designee, at least quarterly, will conduct a comprehensive audit of each facility.  The audit will consist of a random sampling of a minimum of ten (10%) percent of each site's medical records.  A random sampling shall consist of a predetermined sequence of records as agreed between the parties, i.e. every tenth record. At least twenty categories of medical, dental and mental health services will be audited in the categories classified as critical or essential in the Sheriff's Request for Proposals. Unless otherwise agreed, a performance level of ninety (90%) percent compliance of critical and seventy five (75%) percent of essential categories will be the minimum requirement level necessary for acceptable performance by Provider under this Agreement.  Failure to meet these levels will result in the following penalties:

1.     For each and every essential category at each site where Provider fails to meet the performance level percentage as described above, a Thousand Dollar ($1,000.00) penalty will be assessed on Provider.  For each and every critical category at each site where Provider fails to meet the performance level percentage described above, a Two Thousand Dollar ($2,000.00) penalty will be assessed on Provider.

Should subsequent audits reveal continued substandard performance in the same categories, the penalty for such subsequent violations will be double the above stated amount.

D.     Provider shall comply with the Commonwealth of Massachusetts Department of Corrections minimum standards for County Correctional Facilities and Department of Public Health standards for Correctional Facilities and other related regulations and standards.  Provider will be assessed a One Thousand Dollar ($1,000.00) penalty for each required standard which is determined by the Commonwealth's auditors to be in non-compliance.

5.     **ADJUSTMENTS**

A.     If a physician, physician's assistant, nurse practitioner, psychiatrist or psychologist fails to appear for their scheduled shift at any facility and Provider is unable to secure a substitute in the same personnel level and category within the preceding or succeeding seven (7) day period, a "no show" will be determined.  A "no show" classification will enact a credit to the Sheriff at a rate of one hundred (100%) percent compensation for such personnel, which shall be calculated on a monthly basis.

4

**B.**    If the number of off-site medical service transfers by Provider with the exception of bona fide emergencies and transfers for administration of methadone to pregnant inmates exceeds fifteen (15) inmates during any calendar month, the Provider shall credit the Sheriff One Hundred Dollars ($100.00) for each transfer over fifteen.  For the purposes of this Paragraph the term "bona fide emergencies" is defined as those medical conditions which require prompt and necessary medical services or treatment which cannot be provided at the correctional facility by Provider and which actually results in an inpatient hospital admission.  If an increase in the inmate population of the Sheriff exceeds ten (10%) percent of the base census at the date of this Agreement, the threshold of fifteen (15) off site transfers shall be increased proportionately.  This credit will apply to outpatient or specialty care, whether routine or urgent, but will not apply to off site referrals which directly result in actual hospital in-patient admissions.

6.    **QUALIFICATIONS AND LICENSING OF PERSONNEL**

Provider will responsible for assuring that the nursing and other professional staff are licensed in their profession and that such licensure remains in effect during the term of this Agreement.  Provider will ensure that all nursing and professional staff meet the state requirements for licenses and/or certificates and that they are fully qualified to perform the services delineated in this Agreement.  A resume of experience for all proposed staff members must be provided to the Sheriff.  Copies of current licenses and certificates of formal training, as appropriate, must be provided to the Sheriff by the Provider before individuals will be permitted to work under this Agreement.

All personnel hired by Provider shall be required to pass a background investigation conducted by the Sheriff as a requisite for initial and/or continued employment.  These background investigations shall not be charged to Provider.  The Sheriff reserves the right to disallow the use of any individual by Provider who is deemed to pose a safety or security risk.

7.    **APPLICABILITY OF SHERIFF'S RULES AND REGULATIONS**

In performance of this Agreement, Provider agrees to abide by the applicable rules and regulations of the Sheriff including, but not limited to, any and all security regulations and procedures.

8.    **SUBCONTRACTING OF AGREEMENT**

It is understood and agreed that Provider may subcontract all or part of this Agreement.  Provider agrees that in the event it elects to subcontract all or parts of this Agreement, such subcontractors will be bound by all applicable terms and conditions as stated herein.

No subcontract shall relieve or discharge the Provider from any obligation or liability under this Agreement. The Provider shall be as fully responsible to the Sheriff for acts and omissions of its subcontractors and of the persons either directly or indirectly employed by them as it is for the acts and omissions of persons directly or indirectly employed by it.

9.    **PAYMENT TO PROVIDER**

As compensation for services rendered by Provider pursuant to this Agreement, the Sheriff agrees to pay Provider a per diem per inmate as set forth below less any and all penalty payments or credits the Provider owes Sheriff under the terms of this Agreement. The total of said payments shall be based upon the average monthly inmate census for inmates housed and residing in the correctional facilities operated or controlled by the Sheriff which shall be based upon an 11:00 a.m. daily census during the term of this Agreement. The correctional facilities of the Sheriff's Office are the Bristol County Jail and House of Correction, Dartmouth, Massachusetts (including Pre-Release Center); the David R. Nelson Correctional Alcohol Center, New Bedford, Massachusetts; the Ash Street Facility, New Bedford, Massachusetts and any other additional facility which may be operated or controlled by the Sheriff's Office. The parties understand and agree that if an increase in services or population occurs as a result of the operation of additional correctional facilities, the parties shall confer and negotiate any additional costs and/or increase to the inmate per diem rate and shall amend this Agreement accordingly.

Charges for services for the first year of the contract from December 6, 2000 to December 5, 2001 are based on a fixed inmate count of 1050 at a rate of Seven Dollars and Fifty-Nine cents ($7.59) per inmate/per day. This calculation is to be adjusted for actual inmate populations (ADP) in excess of 1100 or below 950. For all instances in which the average daily population in a given month is between 950 to 1100 then the calculation will be based on the fixed inmate count of 1050. The rate charged for inmates above the 1100 threshold is Two Dollars and Twenty Five Cents ($2.25) per inmate/per day. For average inmate populations below 950 the charge will be the fixed inmate count of 1050 times the rate of Seven Dollars and Fifty Nine Cents ($7.59), less a credit of Two Dollars and Twenty Five Cents ($2.25) for the ADP below 950.

For subsequent years the per diem rates will be increased by the Professional Medical Services Category listed in the Consumer Price Index limited to a four percent (4%) increase. The rates are not to exceed the following:

|  | Standard Rate | Adjusted Rate |
|---|---|---|
| December 6, 2001 to November 30, 2002 | $ 7.89 | $ 2.34 |
| December 6, 2002 to November 30, 2003 | $ 8.21 | $ 2.44 |

Provider shall submit invoices to the Sheriff on a monthly basis as determined by the parties. Such monthly invoices shall state the total per diem per inmate cost for that month as described above. The invoice shall also identify the total number of staffing hours, by job category or position, provided by Provider for the month. In conjunction with this data, Provider shall supply the Sheriff with supporting documentation including, but not limited to, employee time cards or weekly payroll logs or records prepared by Provider's administrative staff. The invoice shall also identify and subtract or credit any and all penalty payments or credits which are owed to the Sheriff by Provider pursuant to the terms of this Agreement. Those penalty payments identified shall include off site trip deductions, staffing penalties and audit penalties. The Provider shall supply the Sheriff with supporting documentation for all off site trip reductions and staffing penalties, including but not limited to, each inmate's name, the date of his/her off site transport, and the place of his/her off site services. The invoice shall also set forth the amounts owed Provider by the Sheriff. For inmates who have exceeded the catastrophic limit set forth in the RFP, the Provide shall identify each such inmate who has exceeded the catastrophic limit and shall provide the Sheriff with the name of the inmate(s) and copies of any and all itemized bills of each medical service provider of that inmate.

For the convenience of the parties, a sample invoice setting forth all the above referenced requirements is attached hereto. All invoices submitted by the Provider to the Sheriff shall conform to this sample document unless otherwise agreed to by the parties.

The Sheriff shall review each invoice and shall forthwith notify Provider of any contested amount or other discrepancy and the reason for the disagreement. Uncontested invoices shall be submitted for payment forthwith after review. Upon the Provider's submission of each invoice, the Sheriff will use its best efforts to insure payment as soon as practicable.

Final reconciliation of any and all costs incurred and payments made under this Agreement shall be made within thirty (30) days of the expiration or termination of this Agreement or as soon as possible thereafter.

## 10.    PAYMENT TO SHERIFF RE: PHARMACIST

The parties agree that the PROVIDER shall pay fifty percent (50%) of the salary and benefits of the Pharmacist employed by the SHERIFF. The Pharmacist's initial annual salary and benefits totals Ninety Eight Thousand Eight Hundred Forty Dollars ($98,840). The parties acknowledge that said salary and benefits may be adjusted from time to time at the sole discretion of the SHERIFF.

The SHERIFF shall submit invoices to the PROVIDER on a monthly basis which should state the total cost of the Pharmacist's monthly salary and benefits, as well as,

7

PROVIDER'S fifty percent (50%) share of said salary and benefits. Upon the SHERIFF'S submission of each invoice, the PROVIDER will use its best efforts to insure payment as soon as practicable, but in no event later than thirty (30) days from dates of submission.

## 11.    TERM OF AGREEMENT

The term of this Agreement shall be for one (1) year beginning on December 6, 2000 and ending as of December 5, 2001 and shall renew for two (2) successive one year terms commencing on December 6, 2001, at the discretion of the Sheriff provided all RFP requirements are continued to be met by the Provider and Provider has maintained NCCHC accreditation unless terminated by either party pursuant to the provisions contained in this Agreement.

## 12.    ADDITIONAL SERVICES

The Sheriff agrees to notify Provider, in advance and in writing, should the Sheriff require additional services of Provider prior to expiration of this Agreement. It is understood and agreed that the parties will confer regarding the costs of such additional services and then amend this Agreement accordingly.

## 13.    PROVIDER'S STATUS

It is understood and agreed that Provider is an independent contractor to the Sheriff and under no circumstances is an employee or independent contractor of Provider to be deemed an employee of the Sheriff. The Provider shall have no capacity to involve the Sheriff in any contract nor incur any liability on the part of the Sheriff except as expressly provided in this Agreement. The Sheriff shall not be liable for any personal injury or death to the Provider, its agents, servants, employees or subcontractors as a result of any act by an inmate, prisoner or detainee.

## 14.    TERMINATION

A.    Upon three (3) months written notice to the Provider, the Sheriff may terminate this Agreement for any cause and upon such termination this Agreement shall be of no further legal force or effect. The Sheriff agrees to compensate Provider for any services rendered prior to the date of termination.

**B.**    The Sheriff may terminate or suspend this Agreement by providing written or facsimile notice to the Provider stating the grounds of his action if he determines that immediate action is necessary to protect federal, state and/or county funds or property or to protect persons from injury.  Such termination or suspension shall be effective upon receipt of the notice by Provider, however, the Sheriff agrees to compensate Provider for any services rendered prior to the date of termination.

**C.**    Upon six (6) months written notice to the Sheriff, Provider may terminate this Agreement for any cause and upon such termination this Agreement shall be of no further legal force or effect.  The Sheriff agrees to compensate Provider for any services rendered prior to the date of termination.

## 15.    FISCAL YEAR APPROPRIATIONS

Appropriations for expenditures by the Sheriff and authorizations to spend for particular purposes are made on a fiscal year basis.  The fiscal year for the Sheriff is the twelve (12) month period ending June 30th of each year.  The obligations of the Sheriff under this Agreement for any fiscal year are subject to the appropriation to the Sheriff of funds sufficient to discharge his obligations which accrue in that fiscal year and authorization to spend such funds for the purpose of this Agreement.

If, for any fiscal year during the term of this Agreement, funds for operation of the premises or for the discharge of the Sheriff's obligations under this Agreement are not appropriated or authorized, or the funds so appropriated and authorized are insufficient for that purpose, then this Agreement may be terminated by the Sheriff without liability to the Sheriff for damages, penalties or other charges on account of such termination. The Sheriff agrees to compensate Contractor for any services rendered prior to the date of termination.

## 16.    INDEMNIFICATION

**A.**    Provider shall indemnify, defend and hold harmless the Sheriff, Bristol County Sheriff's Office and Bristol County, their officers, employees and agents, from and against, any and all losses, claims, actions, damages, liability and expenses, including, but not limited to those in connection with loss of life, bodily injury and personal injury or damage to property to the extent occasioned wholly or in part by Provider's acts or omissions or the acts or omissions of Provider's agents, officers, employees, contractors (including contractors and suppliers) or servants pursuant to this Agreement.  Under no circumstances is an inmate of any correctional facility to be considered an employee or agent of Provider.

**B.**      The Sheriff shall indemnify, defend and hold harmless the Provider, its officers, servants, agents and employees, from and against, any and all losses, claims, actions, damages, liability and expenses including, but not limited to, those in connection with loss of life, bodily injury and personal injury or damage to property arising solely out of any act or omission of the Sheriff, their agents, servants and employees in the regular course of their employment which constitute liability within the scope of *M.G.L. c. 258,* including but not limited to negligent action or inaction.  By entering into this Agreement, the Sheriff has not waived their governmental immunity which may be extended to them by operation of law including limitation of damages.

**C.**      Each party's indemnity obligation under this paragraph shall be reduced to the extent by which the liability, damage or expense results from the acts or omissions of the other party or its servants, agents or employees.

**D.**      Neither party shall enter into any Settlement Agreement for which indemnification is sought from the other party without the written consent of the other party.

**E.**      The Provider and Sheriff hereby waive any and all rights to recovery for each other for loss caused by perils defined in their respective fire, extended coverage, and sprinkler leakage policies, if any.

## 17.     **CONFLICT OF INTEREST**

The Provider agrees that it will not engage in any conduct which violates, or induces others to violate, the provisions of *M.G.L. c. 268A* regarding the conduct of public employees.

The Provider, County and Sheriff shall not enter into any arrangement whereby 1) any employee of the County or Sheriff participates in any decision relating to this Agreement which affects his/her personal interest or 2) the Provider knowingly employs or compensates any employees of the Sheriff and County during the term of this Agreement, unless such an arrangement is permitted under *M.G.L. c. 268A.*

The Provider represents and agrees that it presently does not have and will not acquire any interest, direct or indirect, which would conflict in any manner or degree with the services to be performed under this Agreement, or give rise to an appearance of conflict of interest.

10

18.    **MAINTENANCE AND INSPECTION OF RECORDS**

The Provider shall maintain books, records and other compilations of data, financial or
otherwise, pertaining to the performance of the provisions and requirements of the
contract to the extent and in such detail as shall properly substantiate claims under this
contract.

All such records shall be kept for a period of seven (7) years or in such other period as
specified herein.  If any litigation, claim, negotiation, audit or other action involving
records is commenced prior to the expiration of the applicable retention period, all
records shall be retained until completion of the action and resolution of all issues
resulting therefrom, or until the end of the applicable retention period, whichever is later.

The County Commissioners, the Sheriff of Bristol County and the State Auditor and/or
Inspector General or their designees shall have the right at reasonable times and upon
reasonable notice, to examine and copy the books, records or other compilations of data
of the Provider which pertains to the provisions and requirements of the contract.


19.    **CONFIDENTIALITY**

The Provider acknowledges that in performance of the contract, it may acquire or have
access to "personal" data as defined in *M.G.L. c. 66A* or other information deemed
confidential by the Bristol County Sheriff's Office or Massachusetts State Law.  The
Provider shall comply with all laws and regulations regarding confidentiality and privacy
including, but not limited to, any rules and regulations of Bristol County or the Sheriff's
Office.

The Provider shall take reasonable steps to insure the physical security of such data under
its control and to inform each of its employees and subcontractor having any involvement
with such confidential information or data of the laws and regulations relating thereto and
insure the nondisclosure of such data.


20.    **RECORDS**

The records and other information compiled by the Provider in accordance with the
duties and responsibilities of this contract are confidential and shall be the property of the
Sheriff.  Copies of such records shall be provided to the Sheriff within a reasonable
period upon request.

Medical, dental and mental health records shall be maintained by Provider for each
inmate, prisoner or detainee at the Sheriff's correctional institutions in conformance with
all pertinent professional and required standards of confidentiality and shall be retained

11

for a period of time as required by the laws of the Commonwealth of Massachusetts. Any and all original inmate medical, dental and mental health records shall be the property of the Sheriff and shall be surrendered to Sheriff at the termination of this Agreement.  Provider understands that the Sheriff shall have access to any and all inmate medical, dental or mental health records during the term of this Agreement.

## 21.    POLITICAL ACTIVITY PROHIBITED

None of the services to be provided by the Provider shall be used for any partisan political activity or to further the election or defeat of any candidate for public office.

## 22.    ANTI-BOYCOTT COVENANT

During the term of the contract, neither the Contractor, nor any subsidiary or other company within its control shall participate or cooperate with an international boycott as defined in *Section 999 (b) (3) and (4)* of the *IRC of 1954,* as amended by the Tax Reform Act of 1986 or engage in conduct declared unlawful by *Section 2 of M.G.L. c. 151E.* If there shall be a breach of this covenant, then without limiting any such other rights they may have, the Sheriff shall be entitled to terminate this Agreement.

## 23.    NON DISCRIMINATION COVENANT

The Provider and its subcontractors shall not discriminate against any qualified employee or applicant for employment because of race, color, ancestry, age, sex, religion or physical or mental handicap.  The Provider and its subcontractors agree to comply with all applicable federal and state statutes, rules and regulations prohibiting discrimination in employment.

In the event a charge of discrimination is sustained against Provider or any of its subcontractor, the Bristol County Sheriff's Office may impose such sanctions as it deems appropriate including but not limited to:

A.    Withholding of payments due to Provider until the Provider complies

B.    Termination or suspension of the contract

## 24.    ASSIGNMENT AND DELEGATION

Neither party shall assign, delegate or otherwise transfer any obligation or interest in this Agreement, without the prior written consent of the other party.

25. **INSURING VENDOR'S EMPLOYEES**

The Provider agrees, during the term of this Agreement, to maintain at the Provider's expense all insurance required by law for its employees, including disability, workers compensation and unemployment insurance, and to provide the Sheriff with Certificates of Insurance upon request. Any subcontract shall impose a like obligation on the subcontractor(s).

26. **INSURANCE**

Provider agrees that it shall procure and/or maintain at its own expense professional liability insurance covering all errors, omissions of negligent acts of Provider, its employees, subcontractors or anyone directly or indirectly engaged by them made in the performance of this Agreement in the minimum amount of One Million Dollars ($1,000,000.00) per occurrence and Three Million Dollars ($3,000,000.00) in the aggregate annually. Provider shall insure that physicians, dentists, nurses or other professional health care personnel rendering services under this Agreement shall maintain suitable and adequate liability insurance.

Provider further agrees that it shall procure and maintain at its own expense other insurance as follows:

A. Comprehensive (Commercial) General Liability Insurance with coverage limits not less than Five Hundred Thousand Dollars ($500,000.00) per occurrence/annual aggregate and shall include premises operations, independent contractors, products, completed operations, broad form property damage and blanket contractual and personal injury endorsements.

B. Comprehensive Automobile Insurance covering all owned and non owned vehicles operated by Provider and its personnel in the carrying out of this Agreement with coverage limits not less One Hundred Thousand Dollars ($100,000.00) this Agreement per person, Three Hundred Thousand Dollars ($300,000.00) per occurrence bodily injury and Fifty Thousand Dollars ($50,000.00) property damage.

Provider shall notify Sheriff at least thirty (30) days prior to any policy cancellation or termination and shall forthwith submit evidence satisfactory to the Sheriff of suitable replacement policy(s).

Provider shall submit a certificate of insurance on a form acceptable to the Sheriff certifying Provider carries all above referenced coverage. To the extent possible, such insurance shall name the Sheriff as additional insured.

13

**27.    CHOICE OF LAW**

This Contract shall be construed under and governed by the laws of the Commonwealth of Massachusetts. All parties and the agents thereof, agree to bring any federal or state legal proceedings arising under this Contract, in a court of competent jurisdiction within the Commonwealth of Massachusetts. This paragraph shall not be construed to limit any rights a party may have to intervene in any action, wherever pending, in which the other is a party.

**28.    NOTICES**

Unless otherwise specified, any notice hereunder shall be in writing and shall be deemed delivered when given in person to any party or given by certified mail, return receipt requested and addressed as follows:

TO THE SHERIFF:          Peter Berthiaume
                         Assistant Deputy Superintendent
                         Medical Services
                         Bruce A. Assad, Esq., Legal Counsel
                         Bristol County Sheriff's Office
                         400 Faunce Corner Road
                         Dartmouth, MA 02748

TO THE PROVIDER:         Jean L. Byassee, Esq.
                         Senior Vice President
                         General Counsel and Secretary
                         Prison Health Services, Inc.
                         105 Westpark Drive, Suite 300
                         Brentwood, TN 37027

**29.    SEVERABILITY**

If any provision of this Agreement is declared or found to be illegal, unenforceable or void, then both parties shall be relieved of all obligations under that provision. The remainder of the Agreement shall be enforced to the fullest extent permitted by law.

**30.    HEADING AND INTERPRETATION**

The headings used herein are for reference and convenience only and shall not be a factor in the interpretation of this Agreement.

**31.** **WAIVERS**

All conditions, covenants, duties and obligations contained in this Agreement can be waived only by written Agreement. Forbearance or indulgence in any form or manner by a party shall not be construed as a waiver, nor in any way limit the legal or equitable remedies available to that party.

**32.** **AMENDMENT**

No amendment to this Agreement shall be effective unless it is in writing and signed by authorized representatives of all parties.

**33.** **ENTIRE CONTRACT**

**A.**     This Agreement, including any attachments, or documents incorporated by reference, contains the entire Agreement of the parties with respect to the subject matter hereof, and supersedes all prior Agreements, representations, negotiations and undertakings not set forth or incorporated herein.

**B.**     This Agreement has previously incorporated by reference the Sheriff's Request for Proposals and Provider's Proposal. Any ambiguity or conflict among these documents shall be resolved by applying the following order of procedure:

      **1.**     This Agreement, including all scheduled and attachments, and amendments thereto;

      **2.**     The Sheriff's Request for Proposals

      **3.**     The Providers' Proposal

Notwithstanding paragraph (B), the mere omission of any matter from a higher order document shall not negate or modify the provisions of a lower document as to that matter.

**34.** **PUBLICITY**

**A.**     The Provider shall at all times obtain the prior written approval of the Sheriff before any of its officers, agents, employees or subcontractors either during or after expiration or termination of the Agreement make any statement, or issue any material, for publication through any medium of communication, bearing on the work performed or data collected under this Agreement.

15

**B.**     If the Provider or any of its subcontractors publish a work dealing with any aspect of performance under the Agreement, or of the results and accomplishments attained in such performance, the Sheriff shall have a royalty-free, nonexclusive and irrevocable license to reproduce, publish or otherwise use and to authorize others to use the publication.

## 35.   **PROVIDER'S CERTIFICATIONS**

The Provider warrants the truth, accuracy and completeness of the following documents filed with the Sheriff in connection with this Agreement and appended hereto:

   **A.**     Affidavit of Compliance with corporate filing requirements;

   **B.**     Certificate of vote;

   **C.**     Certificate of Tax Compliance

   **D.**     Verification of Insurance

## 36.   **AUTHORITY**

The undersigned represent that they have the authority from any and all appropriate parties or law to enter into this Agreement and will indemnify and hold harmless all other parties against or from any and all costs, claims or liability arising either directly or indirectly from any lack of such authority.

## 37.   **MULTIPLE COPIES**

This Agreement is executed in several counterparts each of which shall be deemed to be an original copy of this Agreement and shall have the force and effect as such.

16

IN WITNESS WHEREOF, Bristol County, acting by and through its County Commissioners and Sheriff, and the Provider have caused this Agreement to be executed by their respective authorized officials on the day and year first written.

**COUNTY OF BRISTOL**

By _(signature)_
County Commissioner

By: _(signature)_
County Commissioner

By: _____
County Commissioner

**PROVIDER**

By: _(signature)_ _____

Name: _Bruce Teav_ _____

Title: _FID Cod_ _____

Company Name: _Prison Health Services, Inc._

**SHERIFF OF BRISTOL COUNTY**

By: _(signature)_
Thomas M. Hodgson, Sheriff

Approved as to form:

_(signature)_
Bruce A. Assad, Legal Counsel

PHARMACIST

SALARY:    $80,000

BENEFITS:   23.6%

|  | Include: | 11.2% | Medical Insurance | 9,000 |
|--|----------|-------|-------------------|-------|
|  |          | 11.1 % | Retirement | 8,800 |
|  |          | 1.3% | Medicare | 1,040 |
|  |          |      |           | 18,840 |

## CERTICATE OF AUTHORITY
(For Corporations Only)

February 1, 2001
Current Date

At a meeting of the Directors of the  Prison Health Services, Inc.  duly called

and held at  Brentwood, TN 37020 on the  24th  day of  October  , 2000, at

which a quorum was present and acting, it was VOTED, that  Bruce A. Teal

the  Exec. Vice Pres.  of the Corporation is hereby authorized and empowered to make,

enter into, sign, seal and deliver in behalf of this Corporation a Contract for  Inmate Medical

Services  with the Bristol County Sheriff's Office and Bristol County, and a

performance bond in connection with said Contract.

I do hereby certify that the above is a true and correct copy of the record, that said VOTE has not

been amended or repealed and is in full force and effect as of this date, and that

Bruce A. Teal  is duly elected  Exec. Vice Pres.  of this Corporation.
(Name)                                                    (Office)

ATTEST:

affix Corporate Seal Here

(Clerk or Secretary of Corporation)
Jean L. Byassee, Corporate Secretary

## AFFIDAVIT OF COMPLIANCE

## THE COMMONWEALTH OF MASSACHUSETTS

EXECUTIVE OFFICE FOR ADMINISTRATION AND FINANCE FORM AF-4A

☐ MASSACHUSETTS BUSINESS CORPORATION

☐ NON-PROFIT CORPORATION

☒ FOREIGN (Non-Massachusetts) CORPORATION

☐ President of

☐ Clerk of

I, __Jean L. Byassee,__ Secretary of
  (Typed Name)

__Prison Health Services, Inc.__
  (Name of Corporation)

__105 Westpark Drive, Suite 300, Brentwood, TN 37027__
  (Address of Principal Office)

hereby certify that said Corporations has filed with the Secretary of State of the Commonwealth

all certificates and annual reports required

  by Chapter 156B, Section 109 (Business Corporation),

  by Chapter 180, Section 26A (Non-Profit Corporation), or

  by Chapter 181, Section 4, (Foreign Corporation), *****

of Massachusetts General Laws.

SIGNED UNDER THE PENALTIES OF PERJURY THIS __1st__ DAY OF

__February__ ,2001.

Signature of responsible Corporate Officer

__Jean L. Byassee, Corporate Secretary__

## VERIFICATION OF INSURANCE

I, <u>Donna Sue Franklin, Human Res.</u>, authorized signatory for
(Name & Title) Director
<u>Prison Health Services, Inc.</u>, whose principle place of
(Contractor)
business is <u>105 Westpark Drive, Suite 300</u>, hereby
(Address) Brentwood, TN 37027

certify, under the pains and penalties of perjury, that said Contractor

provides Workers' Compensation Insurance and all other insurance benefits

as required by Massachusetts General Laws, Chapter 152.


<u>Prison Health Services, Inc.</u>
Contractor

_(signature)_
Authorized Signature

<u>2/1/01</u>
Date

<u>23-2108853</u>
Federal ID No.

# CERTIFICATE OF STATE TAX COMPLIANCE

(Corporate)

Pursuant to Massachusetts General Laws, Chapter 62C, Section 49A, clause (b) added by

Section 36 of Chapter 233 of the Acts of 1983,

I, S. Walker Choppin, Sr. Vice Pres authorized signatory for
<u>(Name and Title) & Treasurer</u>

Prison Health Services, Inc.    whose principal place of business is
<u>(Contractor)</u>

105 Westpark Dr., Suite 300    hereby certify, under the pains and
<u>(Address) Brentwood, Tn 37027</u>

penalties or perjury, that the above-named Contractor has complied with all laws

of the Commonwealth of Massachusetts relating to taxes.

Authorized Signature

Sr. Vice President & Treasurer
Title

2/4/01
Date

23-2108853
Federal Employer ID No.

**PRISON HEALTH SERVICES, INC.**
SAMPLE INVOICE

**CONTRACT:**                                              **MONTH:**

| POSITION | TOTAL MONTHLY CONTRACTED HOURS | TOTAL HOURS WORKED | +1- |
|---|---|---|---|
| Health Administrator | | | |
| General Administrative Clerk | | | |
| Physician | | | |
| Psychiatrist | | | |
| Psychologist | | | |
| Psycho./Master Level Clinician | | | |
| Optometrist | | | |
| Dentist | | | |
| Dental Assistant | | | |
| NP/PA | | | |
| RN | | | |
| LPN | | | |
| Medical Records Clerk | | | |

Supporting documentation (including but not limited to employee time cards or payroll records) for the above is attached hereto.

**CENSUS**

| AVERAGE DAILY CENSUS | RATE | NUMBER OF DAYS | PER DIEM TOTAL CHARGES |
|---|---|---|---|
| | | | $0.00 |

**TRIP DEDUCTIONS**

| QUAL. TRIPS | TOTAL TRIP DEDUCTIONS |
|---|---|
| | $0.00 |

Supporting documentation (including but not limited to inmates' names, dates of trips and destinations) is attached hereto

PER DIEM CHARGES
TRIP DEDUCTIONS
110% STAFFING PENALTY
NO SHOW ADJUSTMENTS
AUDIT PENALTIES

**CATASTROPHIC LIMIT**

Amount Owed to PHS

Supporting documentation (including but not limited to each inmates' name and itemized bills for the expenses of each inmates' health care providers)

**TOTAL
INVOICE AMOUNT**