EXHIBIT

C

AGREEMENT
FOR
INMATE MEDICAL SERVICES
BRISTOL COUNTY SHERIFF'S OFFICE

THIS AGREEMENT made and entered into this __1st__ day of _October_ 1995, by and between Bristol County, a political subdivision of the Commonwealth of Massachusetts acting by and through its Sheriff and County Commissioners but without personal liability to them (hereinafter "Sheriff") and Correctional Health Care Solutions, Inc., (hereinafter "Contractor"), a Pennsylvania corporation duly authorized to conduct business in the Commonwealth of Massachusetts (hereinafter "Provider").

WITNESSETH:

WHEREAS, the Sheriff has an obligation to provide necessary comprehensive medical services to persons who are inmates, detentioners, or prisoners of the County of Bristol's correctional institutions; and

WHEREAS, the Sheriff has conducted a public procurement pursuant to M.G.L. c. 30B to secure such services; and

WHEREAS, the provider has submitted a proposal in response to the Sheriff's Request for Proposals and said Proposal has been selected as the most responsive and responsible by the Sheriff; and

WHEREAS, the Provider is willing to be awarded the Bristol County inmate medical services contract and to provide such services to the Sheriff;

NOW THEREFORE, the parties hereto, intending to be legally bound, hereby covenant and agree as follows:

1. GENERAL SCOPE OF SERVICES

Provider, for and in consideration of the compensation hereinafter set forth, convenants and agrees to provide professional comprehensive health services to all inmates, detentioners or prisoners confined in the correctional facilities of the Bristol County Sheriff's Office, including but not limited to all types of medical, mental health, dental, laboratory, pharmaceutical, hospitalization/in patient care, outpatient/medical clinic care and physician specialty care in accordance with the specifications and terms contained in the Sheriff's Request For Proposal, the Addendum to the Request for Proposal and Provider's Proposal. Said Request for Proposal, Addendum and Provider's Proposal, copies of which are attached hereto, are hereby incorporated herein by reference and made a part of this Agreement.

2.  OTHER CONTRACT DOCUMENTS

    In addition to this Agreement, the Sheriff's Request for
Proposals, the Addendum to the Request For Proposals and Provi-
der's Proposal, the documents hereinafter referred to are hereby
incorporated herein by reference and made a part of this Agree-
ment and shall be referred to as "Other Contract Documents".
The "Other Contract Documents" shall consist of the publication
for the Request for Proposals, certificate of notice of publica-
tion, and the minutes of the Bristol County Commissioners held on
August 29, 1995 awarding the contract set forth herein.

3.  PERFORMANCE BOND

    Provider agrees to procure and submit to the Sheriff a
performance bond in the amount of Two Hundred Fifty Thousand
($250,000.00) dollars.

    The bond shall be issued by a surety company licensed or
authorized by the Massachusetts Division of Insurance.

4.  PROVIDER PERFORMANCE PENALTIES

    (A)  Provider shall insure that all correctional facilities
under the control of the Bristol County Sheriff's Office must be
accredited by the NCCHC within twelve (12) months of the date of
this Agreement. A Ten Thousand ($10,000.00) dollar penalty shall
be assessed against provider which it shall pay to the Sheriff
for each facility that fails to receive NCCHC accreditation
within the prescribed time.

    (B)  A staffing penalty of 110% of position salary will be
assessed by Sheriff against Provider on all positions not staffed
for a period of one month (4 weeks). This penalty shall repre-
sent 110% of the total compensation package (including salary and
benefit packages) for all positions called for under this Agree-
ment. The staffing penalty will be assessed each day until the
position is filled. The filling of vacant positions with staff
defined in the section entitled "Agency Utilization Adjustment
Section" of the Sheriff's Request for Proposals shall not be an
acceptable avoidance of the staffing penalty. Provider shall
provide Sheriff with a list of all positions and/or job titles of
its on-site personnel and the monetary value or total of each
such position's salary and benefits package(s). Provider shall
notify the Sheriff of any changes or modifications in the posi-
tions' salary and/or benefits packages during the term of this
Agreement.

    (C)  The Sheriff, or its designee, at least quarterly, will
conduct a comprehensive audit of each facility. The audit will
consist of a random sampling of a minimum of ten (10%) percent of
each site's medical records. At least twenty categories of
medical, dental and mental health services will be audited in the
categories classified as critical or essential in the Sheriff's
Request for Proposals. Unless otherwise agreed, a performance

level of 90% compliance of critical and 75% of essential catego-
ries will be the minimum requirement level necessary for accept-
able performance by Provider under this Agreement.    Failure to
meet these levels will result in the following penalties:

A)   For each and every essential category at each site where
Provider  fails to meet the performance level percentage  as  de-
scribed  above,  a thousand ($1,000) dollar penalty will  be  as-
sessed  on  Provider.    For each and every critical  category  at
each  site  where Provider fails to meet  the  performance  level
percentage described above, a Two Thousand ($2,000) dollar penal-
ty will be assessed on Provider.

Should  subsequent audits reveal continued substandard  per-
formance in the same categories, the penalty for such  subsequent
violations will be double the above stated amount.

5.  ADJUSTMENTS

A.  If a physician, physician's assistant, nurse practioner,
psychiatrist or psychologist fails to appear for their  scheduled
shift  at  any facility and the provider is unable  to  secure  a
substitute  in the same personnel level and category within  the
succeeding seven (7) day period, a "no show" will be  determined.
A "no show" classification will enact a credit to the Sheriff  at
a  rate of 100% compensation for such personnel, which  shall  be
calculated on a monthly basis.

B.    If the number of off-site medical service transfers  by
Provider  with  the exception of bona fide  emergencies  exceeds
fifteen  (15)  inmates during any calendar month,  the  Provider
shall  credit the Sheriff one hundred ($100.00) dollars for  each
transfer  over fifteen.  For the purposes of this  Paragraph  the
term  "bona fide emergencies" is defined as those medical  condi-
tions  which  require prompt and necessary medical  services  or
treatment  which cannot be provided at the correctional  facility
by  Provider and which actually results in an inpatient  hospital
admission.  If an increase in the inmate population of the  Sher-
iff  exceeds ten (10) percent of the base census at the  date  of
this Agreement, the threshold of fifteen off site transfers shall
be  increased proportionally.  This credit will apply to  outpa-
tient or specialty care, whether routine or urgent, but will  not
apply  to  off site referrals which directly result  in  actual
hospital in patient admissions.

6.  QUALIFICATIONS AND LICENSING OF PERSONNEL

Provider  will be responsible for assuring that the  nursing
and other professional staff are licensed in their profession and
that  such  licensure remains in effect during the term of  this
Agreement.   Provider  will ensure that all nursing and  profes-
sional  staff  meet the state requirements for licenses and/or
certificates  and  that they are fully qualified to  perform  the
services  delineated in this Agreement. A resume of  experience
for  all proposed staff members must be provided to the  Sheriff.

Copies of current licenses and certificates of formal training, as appropriate, must be provided to the Sheriff by the Provider before individuals will be permitted to work under this Agreement.

All personnel hired by Provider shall be required to pass a background investigation conducted by the Sheriff as a requisite for initial and/or continued employment. These background investigations shall not be charged to Provider. The Sheriff reserves the right to disallow the use of any individual by Provider who is deemed to pose a safety or security risk.

## 7. APPLICABILITY OF SHERIFF'S RULES AND REGULATIONS

In performance of this Agreement, Provider agrees to abide by the applicable rules and regulations of the Sheriff including, but not limited to, any and all security regulations and procedures.

## 8. SUBCONTRACTING OF AGREEMENT

It is understood and agreed that Provider may subcontract all or part of this Agreement. Provider agrees that in the event it elects to subcontract all or parts of this Agreement, such subcontractors will be bound by all applicable terms and conditions as stated herein. No subcontract shall relieve or discharge the Provider from any obligation or liability under this Agreement. The Provider shall be as fully responsible to the Sheriff for acts and omissions of its subcontractors and of the persons either directly or indirectly employed by them as it is for the acts and omissions of persons directly or indirectly employed by it.

## 9. PAYMENT TO PROVIDER

As compensation for services rendered by Provider pursuant to this Agreement, the Sheriff agrees to pay Provider a per diem per inmate as set forth below less any and all penalty payments or credits the Provider owes Sheriff under the terms of this Agreement. The total of said payments shall be based upon the average monthly inmate census for inmates housed and residing in the correctional facilities operated or controlled by the Sheriff which shall be based upon an 11:00 a.m. daily census during the term of this Agreement. The correctional facilities of the Sheriff's Office are the Bristol County Jail and House of Correction, North Dartmouth, Massachusetts (including Pre-Release Center); the Eastern Massachusetts Correctional Alcohol Center, New Bedford, Massachusetts; the Ash Street Facility, New Bedford, Massachusetts and any other additional facility which may be operated or controlled by the Sheriff's Office. The parties understand and agree that if an increase in services or population occurs as a result of the operation of additional correctional facilities, the parties shall confer and negotiate any additional costs and/or increase to the inmate per diem rate and shall amend this Agreement accordingly.

The per diem per inmate rates are as follows:

| | |
|---|---|
| October 1, 1995 to June 30, 1997 | $4.65 per inmate/per day |
| July 1, 1997 to June 30, 1998 | $4.79 per inmate/per day |
| July 1, 1998 to June 30, 1999 | $4.96 per inmate/per day |

Provider shall submit invoices to the Sheriff on a monthly basis as determined by the parties. Such monthly invoices shall state the total per diem per inmate cost for that month as described above. The invoice shall also identify the total number of staffing hours, by job category or position, provided by Provider for the month. In conjunction with this data, Provider shall supply the Sheriff with supporting documentation including, but not limited to, employee time cards or weekly payroll logs or records prepared by Provider's administrative staff. The invoice shall also identify and subtract or credit any and all penalty payments or credits which are owed to the Sheriff by Provider pursuant to the terms of this Agreement. Those penalty payments identified shall include off site trip deductions, staffing penalties and audit penalties. The Provider shall supply the Sheriff with supporting documentation for all off site trip reductions and staffing penalties, including but not limited to, each inmate's name, the date of his/her off site transport, and the place of his/her off site services. The invoice shall also set forth the amounts owed Provider by the Sheriff. For inmates who have exceeded the catastrophic limit set forth in the RFP, the Provider shall identify each such inmate who has exceeded the catastrophic limit and shall provide the Sheriff with the name of the inmates(s) and copies of any and all itemized bills of each medical service provider of that inmate.

For the convenience of the parties, a sample invoice setting forth all the above referenced requirements is attached hereto. All invoices submitted by the Provider to the Sheriff shall conform to this sample document unless otherwise agreed to by the parties.

The Sheriff shall review each invoice and shall forthwith notify Provider of any contested amount or other discrepancy and the reason for the disagreement. Uncontested invoices shall be submitted for payment forthwith after review. Upon the Provider's submission of each invoice, the Sheriff will use its best efforts to insure payment as soon as practicable.

Final reconciliation of any and all costs incurred and payments made under this Agreement shall be made within (30) days of the expiration or termination of this Agreement or as soon as possible thereafter.

10. TERM OF AGREEMENT

The term of this Agreement shall be for one year and nine months beginning on October 1, 1995 and ending as June 30, 1997 and shall renew for two (2) successive one year terms commencing on July 1, 1997 at the discretion of the Sheriff unless terminat-

ed by either party pursuant to the provisions contained in this Agreement.

## 11. ADDITIONAL SERVICES

The Sheriff agrees to notify Provider, in advance and in writing, should the Sheriff require additional services of Provider prior to expiration of this Agreement. It is understood and agreed that the parties will confer regarding the costs of such additional services and then amend this Agreement accordingly.

## 12. PROVIDER'S STATUS

It is understood and agreed that Provider is an independent contractor to the Sheriff and under no circumstances is an employee or independent contractor of Provider to be deemed an employee of the Sheriff. The Provider shall have no capacity to involve the Sheriff in any contract nor incur any liability on the part of the Sheriff except as expressly provided in this Agreement. The Sheriff shall not be liable for any personal injury or death to the Provider, its agents, servants, employees or subcontractors as a result of any act by an inmate, prisoner or detainee.

## 13. TERMINATION

a) Upon thirty (30) days written notice to the Provider, the Sheriff may terminate this Agreement for any cause and upon such termination this Agreement shall be of no further legal force or effect. The Sheriff agrees to compensate Provider for any services rendered prior to the date of termination.

b) The Sheriff may terminate or suspend this Agreement by providing written or facsimile notice to the Provider stating the grounds of his action if he determines that immediate action is necessary to protect federal, state and/or county funds or property or to protect persons from injury. Such termination or suspension shall be effective upon receipt of the notice by Provider, however, the Sheriff agrees to compensate Provider for any services rendered prior to the date of termination.

c) Upon ninety (90) days written to the Sheriff, Provider may terminate this Agreement for any cause and upon such termination this Agreement shall be of no further legal force or effect. The Sheriff agrees to compensate Provider for any services rendered prior to the date of termination.

## 14. FISCAL YEAR APPROPRIATIONS

Appropriations for expenditures by the Sheriff and authorizations to spend for particular purposes are made on a fiscal year basis. The fiscal year for the Sheriff is the twelve month period ending June 30th of each year. The obligations of the Sheriff under this Agreement for any fiscal year are subject to

the appropriation to the Sheriff of funds sufficient to discharge his obligations which accrue in that fiscal year and authorization to spend such funds for the purpose of this Agreement.

If, for any fiscal year during the term of this Agreement, funds for operation of the premises or for the discharge of the Sheriff's obligations under this Agreement are not appropriated or authorized, or the funds so appropriated and authorized are insufficient for that purpose, then this Agreement may be terminated by the Sheriff without liability to the Sheriff for damages, penalties or other charges on account of such termination. The Sheriff agrees to compensate Contractor for any services rendered prior to the date of termination.

## 15. INDEMNIFICATION

(A) Provider shall indemnify, defend and hold harmless the Sheriff, Bristol County Sheriff's Office and Bristol County, their officers, employees and agents, from and against, any and all losses, claims, actions, damages, liability and expenses, including, but not limited to those in connection with loss of life, bodily injury and personal injury or damage to property to the extent occasioned wholly or in part by Provider's acts or omissions or the acts or omissions of Provider's agents, officers, employees, contractors (including contractors and suppliers) or servants pursuant to this Agreement. Under no circumstances is an inmate of any correctional facility to be considered an employee or agent of Provider.

(B) The Sheriff shall indemnify, defend and hold harmless the Provider, its officers, servants, agents and employees, from and against, any and all losses, claims, actions, damages, liability and expenses including, but not limited to, those in connection with loss of life, bodily injury and personal injury or damage to property arising solely out of any act or omission of the Sheriff, their agents, servants and employees in the regular course of their employment which constitute liability within the scope of M.G.L. c.258, including but not limited to negligent action or inaction. By entering into this Agreement, the Sheriff has not waived their governmental immunity which may be extended to them by operation of law including limitation of damages.

(C) Each party's indemnity obligation under this paragraph shall be reduced to the extent by which the liability, damage or expense results from the acts or omissions of the other party or its servants, agents, or employees.

(D) Neither party shall enter into any Settlement Agreement for which indemnification is sought from the other party without the written consent of the other party.

(E) The Provider and Sheriff hereby waive any and all rights to recovery for each other for loss caused by perils defined in

their respective fire, extended coverage, and sprinkler leakage policies, if any.

16. CONFLICT OF INTEREST

The Provider agrees that it will not engage in any conduct which violates, or induces others to violate, the provisions of M.G.L. c. 268A regarding the conduct of public employees.

The Provider, County and Sheriff shall not enter into any arrangement whereby 1) any employee of the County or Sheriff participates in any decision relating to this Agreement which affects his/her personal interest or 2) the Provider knowingly employs or compensates any employees of the Sheriff and County during the term of this Agreement, unless such an arrangement is permitted under M.G.L. c. 268A. Employment of former Commonwealth, County or Sheriff employees must also be in compliance with the provisions of M.G.L. c. 268A.

The Provider represents and agrees that it presently does not have and will not acquire any interest, direct or indirect, which would conflict in any manner or degree with the services to be performed under this Agreement, or give rise to an appearance of conflict of interest.

17. MAINTENANCE AND INSPECTION OF RECORDS

The Provider shall maintain books, records and other compilations of data, financial or otherwise, pertaining to the performance of the provisions and requirements of the contract to the extent and in such detail as shall properly substantiate claims under this contract.

All such records shall be kept for a period of seven (7) years or in such other period as specified herein. If any litigation, claim, negotiation, audit or other action involving records is commenced prior to the expiration of the applicable retention period, all records shall be retained until completion of the action and resolution of all issues resulting therefrom, or until the end of the applicable retention period, whichever is later.

The County Commissioners, the Sheriff of Bristol County and the State Auditor and/or Inspector General or their designees shall have the right at reasonable times and upon reasonable notice, to examine and copy the books, records or other compilations of data of the Provider which pertains to the provisions and requirements of the contract.

18. CONFIDENTIALITY

The Provider acknowledges that in performance of the contract, it may acquire or have access to "personal" data as defined in M.G.L.c. 66A or other information deemed confidential by the Bristol County Sheriff's Office or Massachusetts State Law.

The Provider shall comply with all laws and regulations regarding confidentiality and privacy including, but not limited to, any rules or regulations of Bristol County or the Sheriff's Office.

The Provider shall take reasonable steps to insure the physical security of such data under its control and to inform each of it's employees and subcontractor having any involvement with such confidential information or data of the laws and regulations relating thereto and to insure the nondisclosure of such data.

19. RECORDS

The records and other information compiled by the Provider in accordance with the duties and responsibilities of this contract are confidential and shall be the property of the Sheriff. Copies of such records shall be provided to the Sheriff within a reasonable period upon request.

Medical, dental and mental health records shall be maintained by Provider for each inmate, prisoner or detainee at the Sheriff's correctional institutions in conformance with all pertinent professional and required standards of confidentiality and shall be retained for a period of time as required by the laws of the Commonwealth of Massachusetts. Any and all original inmate medical, dental, and mental health records shall be the property of the Sheriff and shall be surrendered to Sheriff at the termination of this Agreement. Provider understands that the Sheriff shall have access to any and all inmate medical, dental or mental health records during the term of this Agreement.

20. POLITICAL ACTIVITY PROHIBITED

None of the services to be provided by the Provider shall be used for any partisan political activity or to further the election or defeat of any candidate for public office.

21. ANTI-BOYCOTT COVENANT

During the term of the contract, neither the Contractor, nor any subsidiary or other company within its control shall participate or cooperate with an international boycott as defined in Section 999 (b) (3) and (4) of the IRC of 1954, as amended by the Tax Reform Act of 1986 or engage in conduct declared unlawful by Section 2 of M.G.L. c. 151E.

If there shall be a breach of this covenant, then without limiting any such other rights they may have, the Sheriff shall be entitled to terminate this Agreement

22. NON DISCRIMINATION COVENANT

The Provider and its subcontractors shall not discriminate against any qualified employee or applicant for employment be-

cause of race, color, ancestry, age, sex, religion or physical or mental handicap. The Provider and its subcontractors agree to comply with all applicable federal and state statutes, rules and regulations prohibiting discrimination in employment.

In the event a charge of discrimination is sustained against Provider or any of its subcontractor, the Bristol County Sheriff's Office may impose such sanctions as it deems appropriate including but not limited to:

a) withholding of payments due to Provider until the Provider complies

b) Termination or suspension of the contract

23. ASSIGNMENT AND DELEGATION

Neither party shall assign, delegate or otherwise transfer any obligation or interest in this Agreement, without the prior written consent of the other party.

24. INSURING VENDOR'S EMPLOYEES

The Provider agrees, during the term of this Agreement, to maintain at the Provider's expense all insurance required by law for its employees, including disability, workmen's compensation and unemployment insurance, and to provide the Sheriff with Certificates of Insurance upon request. Any subcontract shall impose a like obligation on the subcontractor(s).

25. INSURANCE

Provider agrees that it shall procure and/or maintain at its own expense professional liability insurance covering all errors, omissions or negligent acts of Provider, its employees, subcontractors or anyone directly or indirectly engaged by them made in the performance of this Agreement in the minimum amount of one million ($1,000,000.00) dollars per occurrence and three million ($3,000,000.00) dollars in the aggregate annually. Provider shall insure that physicians, dentists, nurses or other professional health care personnel rendering services under this Agreement shall maintain suitable and adequate liability insurance.

Provider further agrees that it shall procure and maintain at its own expense other insurance as follows:

a) Comprehensive (Commercial) General Liability Insurance with coverage limits not less than $500,000 per occurrence/annual aggregate and shall include premises operations, independent contractors, products, completed operations, broad form property damage and blanket contractual and personal injury endorsements.

c) Comprehensive Automobile Insurance covering all owned and non owned vehicles operated by Provider and its personnel in the carrying out of this Agreement with coverage limits not less

than $100,000 this Agreement per person, $300,000 per occurrence bodily injury and $50,000 property damage.

Provider shall notify Sheriff at least 30 days prior to any policy cancellation or termination and shall forthwith submit evidence satisfactory to the Sheriff of suitable replacement policy(s).

Provider shall submit a certificate of insurance on a form acceptable to the Sheriff certifying Provider carries all above referenced coverage. To the extent possible, such insurance shall name the Sheriff as additional insured.

## 26. CHOICE OF LAW

This Contract shall be construed under and governed by the laws of the Commonwealth of Massachusetts. All parties and the agents thereof, agree to bring any federal or state legal pro- ceedings arising under this Contract, in a court of competent jurisdiction within the Commonwealth of Massachusetts. This paragraph shall not be construed to limit any rights a party may have to intervene in any action, wherever pending, in which the other is a party.

## 27. NOTICES

Unless otherwise specified, any notice hereunder shall be in writing and shall be deemed delivered when given in person to any party or given by certified mail, return receipt requested and addressed as follows:

TO THE SHERIFF:      Raymond Sylvia
                     Assistant Deputy Superintendent/
                     Medical Services
                     Michael J. Murray, Esq./Legal Counsel
                     Bristol County Sheriff's Office
                     400 Faunce Corner Road
                     North Dartmouth, Massachusetts  02748

TO THE PROVIDER:     M. Claire Lomax, Esq.
                     General Counsel
                     Correctional Health Care Solutions, Inc.
                     200 Highpoint Drive Suite 215
                     Chalfont, PA  18914

## 28. SEVERABILITY

If any provision of this Agreement is declared or found to be illegal, unenforceable or void, then both parties shall be relieved of all obligations under that provision. The remainder of the Agreement shall be enforced to the fullest extent permit- ted by law.

29.  HEADING AND INTERPRETATION

    The headings used herein are for reference and convenience only and shall not be a factor in the interpretation of this Agreement.

30.  WAIVERS

    All conditions, covenants, duties and obligations contained in this Agreement can be waived only by written Agreement. Forbearance of indulgence in any form or manner by a party shall not be construed as a waiver, nor in any way limit the legal or equitable remedies available to that party.

31.  AMENDMENT

    No amendment to this Agreement shall be effective unless it is in writing and signed by authorized representatives of all parties.

32.  ENTIRE CONTRACT

    (a) This Agreement, including any attachments, or documents incorporated by reference, contains the entire Agreement of the parties with respect to the subject matter hereof, and supersedes all prior Agreements, representations, negotiations and undertakings not set forth or incorporated herein.

    (b)  This Agreement has previously incorporated by reference the Sheriff's Request for Proposals and Provider's Proposal. Any ambiguity or conflict among these documents shall be resolved by applying the following order of procedure:

    1.  This Agreement, including all scheduled and attachments, and amendments thereto;

    2.  The Sheriff's Request for Proposals

    3.  The Providers' Proposal

    Notwithstanding paragraph (b), the mere omission of any matter from a higher order document shall not negate or modify the provisions of a lower document as to that matter.

33.  PUBLICITY

    (a)  The Provider shall at all times obtain the prior written approval of the Sheriff before any of its officers, agents, employees or subcontractors either during or after expiration or termination of the Agreement make any statement, or issue any material, for publication through any medium of communication, bearing on the work performed or data collected under this Agreement.

(b)   If the Provider or any of its subcontractors publish a work dealing with any aspect of performance under the Agreement, or of the results and accomplishments attained in such performance, the Sheriff shall have a royalty-free, nonexclusive and irrevocable license to reproduce, publish or otherwise use and to authorize others to use the publication.

34.  PROVIDER'S CERTIFICATIONS

The Provider warrants the truth, accuracy and completeness of the following documents filed with the Sheriff in connection with this Agreement and appended hereto:

    a)   Affidavit of Compliance with corporate filing requirements;

    b)   Certificate of vote;

    c)   Certificate of Tax Compliance

    d)   Verification of Insurance

35.  AUTHORITY

The undersigned represent that they have the authority from any and all appropriate parties or law to enter into this Agreement and will indemnify and hold harmless all other parties against or from any and all costs, claims or liability arising either directly or indirectly from any lack of such authority.

36.  MULTIPLE COPIES

This Agreement is executed in several counterparts each of which shall be deemed to be an original copy of this Agreement and shall have the force and effect as such.

IN WITNESS WHEREOF, Bristol County, acting by and through, its County Commissioners and Sheriff, and the Provider have caused this Agreement to be executed by their respective authorized officials on the day and year first written.

COUNTY OF BRISTOL

By: _____
County Commissioner

By: _____
County Commissioner

By: _____
County Commissioner

PROVIDER

By: _____

Name: Laura L. Gaines

Title: President

Company Name: Correctional Healthcare Solutions, Inc.

SHERIFF OF BRISTOL COUNTY

By: _____
    David R. Nelson, Sheriff

Approved as to form:

_____
Michael J. Murray, Counsel

CORRECTIONAL HEALTHCARE SOLUTIONS, INC.

SAMPLE INVOICE

CONTRACT:                                                   MONTH:

| POSITION | TOTAL MONTHLY CONTRACTED HOURS | TOTAL HOURS WORKED | +/- |
|---|---|---|---|
| Health Administrator | | | |
| General Administrative Clerk | | | |
| Physician | | | |
| Psychiatrist | | | |
| Psychologist | | | |
| Psychologist/Masters Level Clinician | | | |
| Optometrist | | | |
| Dentist | | | |
| Dental Assistant | | | |
| NP/PA | | | |
| RN | | | |
| LPN | | | |
| Medical Records Clerk | | | |

Supporting documentation (including but not limited to employee time cards or payroll records) for the above is attached hereto.

CENSUS

| AVERAGE DAILY CENSUS | RATE | NUMBER OF DAYS | PER DIEM TOTAL CHARGES |
|---|---|---|---|
| | | | $0.00 |

TRIP DEDUCTIONS

| QUAL. TRIPS | TOTAL Trip DEDUCTIONS |
|---|---|
| | $0.00 |

Supporting documentation (including but not limited to inmates' names, dates of trips + destinations) is attached hereto

PER DIEM CHARGES
TRIP DEDUCTIONS
~~STAFFING SHORTAGES (page 2)~~ 110% staffing penalty
~~INVOICE TOTAL~~ No show adjustments
Audit penalties

Catastrophic limit

amount owed to CHS
Supporting documentation (including but not limited to each inmate's name + itemized bills for the expenses of each inmate's health care providers)

000115

Total invoice amount

## CERTIFICATE OF AUTHORITY
### (For Corporations Only)

November 17, 1995
(Current Date)

At a meeting of the Directors of the ___Board of Correctional

___ Healthcare Solutions, Inc. ___ duly called and held at

___ corporate headquarters ___

on the ___7th___ day of ___September___, 19 _90_, at which a

quorum was present and acting, it was VOTED, that ___Laura L. Gaines___

the___President___ ___of this corporation

is hereby authorized and empowered to make, enter into, sign, seal and deliver in behalf of this

corporation a contract for ___health services to correctional facilities___
(Describe Service)

with the Bristol County Sheriff's Office and Bristol County, and a performance bond in
connection with said contract.

I do hereby certify that the above is a true and correct copy of the record, that said VOTE has not
been amended or repealed and is in full force and effect as of this date, and that

___Laura L. Gaines___
(Name)

is the duly elected ___President___ ___of this corporation.
(Office)

ATTEST:

Affix Corporate Seal
Here

_[signature]_
(Clerk or Secretary of Corporation)

BRISTOL COUNTY SHERIFF'S OFFICE
400 FAUNCE CORNER ROAD
NORTH DARTMOUTH, MASSACHUSETTS 02747

000119

CERT6

## CERTIFICATE OF STATE TAX COMPLIANCE

### (CORPORATE)

Pursuant to Massachusetts General Laws, Chapter 62C,
Section 49A, clause (b) added by section 36 of
Chapter 233 of the Acts of 1983,

I, __Laura L. Gaines, President__, authorized signatory for
      (Name and Title)

__Correctional Healthcare Solutions, Inc.__ whose principal place
      (Contractor)

of business is __200 Highpoint Drive, Chalfont, PA__
           (Address)

hereby certify, under the pains and penalties of perjury,

that the above-named Contractor has complied with all laws

of the Commonwealth of Massachusetts relating to taxes.

_Laura L. Gaines_
Authorized Signature

__President__
Title

__November 17, 1995__
Date

__23-2611351__
Federal Employer ID No.

000120

CERT1

## AFFIDAVIT OF COMPLIANCE

### The Commonwealth of Massachusetts

Executive Office for Administration and Finance Form AF-4A

|‾|     MASSACHUSETTS BUSINESS CORPORATION

|‾|     NON-PROFIT CORPORATION

|X|     FOREIGN (non-Massachusetts) CORPORATION

                                                    |X| President of

I,   **Laura L. Gaines**                     |‾| Clerk of
          (Typed Name)

  **Correctional Healthcare Solutions, Inc.**
          (Name of Corporation)

  **200 Highpoint Drive, Chalfont, PA**
          (Address of Principal Office)

hereby certify that said corporation has filed with the
Secretary of State of the Commonwealth all certificates
and annual reports required

  by Chapter 156B, Section 109 (business corporation),

  by Chapter 180, Section 26A (non-profit corporation), or

  by Chapter 181, Section 4, (foreign corporation),

of the Massachusetts General Laws.

SIGNED UNDER THE PENALTIES OF PERJURY THIS   **17th**   DAY OF

**November**               , 19 **95** .

Signature of responsible corporate officer

*Laura L. Gaines*

000121

CERT8

## VERIFICATION OF INSURANCE

I  _Laura L. Gaines, President_ , authorized signatory
        (Name & Title)

for  **Correctional Healthcare Solutions, Inc.** whose principle
        (Contractor)

place of business is  **200 Highpoint Drive, Chalfont, PA** , hereby
                        (Address)

certify, under the pains and penalties of perjury, that
said Contractor provides workers' compensation insurance
and all other insurance benefits as required by
Massachusetts General Laws, Chapter 152.

                        **Correctional Healthcare Solutions, Inc.**
                        (Contractor)

                        _Laura L. Gaines_
                        (Authorized Signature)

                        **President**
                        (Title)

                        **November 17, 1995**
                        (Date)

                        **23-2611351**
                        (Federal ID No.)

000122



**THE COMMONWEALTH OF MASSACHUSETTS**

OFFICE OF THE

BRISTOL COUNTY SHERIFF

# FILE COPY

400 FAUNCE CORNER ROAD
NORTH DARTMOUTH, MA 02747

TEL. (508) 995-1311
FAX (508) 995-7835

DAVID R. NELSON
SHERIFF

November 18, 1996

Claire Lomax, Esq.
General Counsel
Correctional Healthcare Solutions, Inc.
200 Highpoint Drive
Chalfont, PA  18914

RE:  Side letter to Agreement between
     Bristol County Sheriff's Office and Correctional
     Healthcare Solutions, Inc.  Dated 10/01/95

Dear Attorney Lomax:

     This side letter to the parties' agreement dated 10/01/95 confirms that the Bristol County Sheriff's Office and Correctional Healthcare Solutions, Inc. (CHS) have conferred regarding CHS' hiring of Augustin Enaw, M.D., a physician licensed in general practice, as medical director for the Bristol County Sheriff's Office under the parties' Agreement. The Bristol County Sheriff's Office has consented to CHS' requested waiver of the parties' agreement's requirement of board eligibility/certification (as referenced in the RFP) for Medical Director in this instance. The Bristol County Sheriff's Office's consent to the waiver is limited solely to the hiring of Doctor Enaw and shall in no way apply to future or subsequent candidates for the medical director's position. Should it become necessary to replace Dr. Enaw, CHS acknowledges that it shall be bound by the parties agreement's requirements of board/certification for Medical Director unless there are specifically waived, in writing, by the Bristol County Sheriff's Office.

     Other than the exception pertaining to Dr. Enaw, CHS understands that it is bound by any and all requirements relating to providers outlined in the executed agreement, including the RFP.

     If the above understanding and agreement is unacceptable or inconsistent with CHS' understanding in this regard, please contact me. Otherwise, this side letter will become part of the contractual record and document the parties' agreement in this matter.

                              Very truly yours,

                              Michael J. Murray, Esq.
                              A.D.S./Legal Services

MJM/cg

cc: Raymond Sylvia, ADS/Medical Services

000123



Correctional
Healthcare
Solutions, Inc.

*innovative health care management*

November 4, 1996

<u>Via Facsimile & U.S. Mail</u>

Colonel Raymond Sylvia
A.D.S./Medical Services
400 Faunce Corner Road
North Dartmouth, MA 02747

RE: Side Letter to Agreement Between Bristol County Sheriff's Office and
Correctional Healthcare Solutions, Inc. dated 10/1/95

Dear Colonel Sylvia:

This side letter to the above-referenced agreement, confirms that the Bristol
County Sheriff's Office and Correctional Healthcare Solutions, Inc. ("CHS") have
conferred regarding our hiring a physician licensed in general practice to be our Medical
Director on this contract. The County has consented to CHS' requested waiver of the
requirements of board eligibility/certification referenced in the RFP for Medical Director
and other physician positions. Therefore, as of the date of this letter, Bristol County and
CHS agree that the licensure requirement for CHS to hire a physician will be that he/she
is licensed in general practice or family medicine. Other than this exception, CHS
understands that it is bound by the remaining requirements relating to providers outlined
in the executed agreement, including the RFP.

If the understanding and agreement outlined herein is inconsistent with the
County's understanding in this regard, please so advise. Otherwise, this side letter will
become part of the contractual record and document the parties agreement on this matter.

Very truly yours,

M. Claire Lomax, Esq.
General Counsel

cc: Michael Murray, Esq., A.D.S./Legal Services
Ann Mack, FNP/MSN, V.P. of Operations
Nancy Lawrence, RN, Regional Administrator, NE
Maria Alicea, RN, Health Services Administrator

000124

AGREEMENT OF AMENDMENT

This Agreement of Amendment made this 28th day of MARCH 1996, by and between the Bristol County Sheriff's Office and Correctional Healthcare Solutions, Inc. (hereinafter "Provider").

WHEREAS, the Sheriff has an obligation to provide necessary medical services to persons who are inmates, detentioners and prisoners of the County of Bristol; and

WHEREAS, by Agreement dated October 1, 1995 between the Bristol County Sheriff's Office and Provider, the Provider has agreed to provide necessary medical services to inmates, detentioners and prisoners in the custody of the Sheriff of Bristol County; and

WHEREAS, the Bristol County Sheriff's Office has, in its custody, a quadripelic inmate who requires special medical services not covered by the parties' Agreement dated October 1, 1995; and

WHEREAS, the parties desire to amend the terms and conditions of their Agreement dated October 1, 1995.

NOW THEREFORE, the parties mutually covenant and agree as follows:

1. Provider shall provide additionally staffing, on a temporary basis, to manage any and all medical needs of a quadriplegic inmate while he is incarcerated at the Sheriff's Office's Dartmouth House of Correction.

2. Providers will provide a trained nursing assistant for two (2) shifts each day seven days a week, for a total of 112 hour per week at a fee of $17.86 per hour. The total hours may increase or decrease due to the needs of the Sheriff's Office. The Sheriff's Office shall pay Provider for any and all hours worked by Provider's nursing assistant at the hourly rate previously stated in this paragraph. Provider's services shall include care while the inmate is on-site at the Dartmouth House of Correction. The Sheriff's Office will be responsible for administering any and all care to the inmate while he is off-site.

3. Provider shall generate an additional separate invoice on a monthly basis, for the services set forth in this Agreement of Amendment. Said invoices shall delineate all hours worked.

4.    In all other respects, the terms, convenants and conditions of the parties' Agreement dated October 1, 1995 shall be and remain in full force and effect.

IN WITNESS WHEREOF, the Bristol City Sheriff's Office and Provider have cause this Agreement to be executed on the day and year first written.

BRISTOL COUNTY SHERIFF'S OFFICE

BY:_____

Name:_____

Title:_____

CORRECTIONAL HEALTHCARE SOLUTIONS, INC.

By:_____

Name: Laura L. Gaines

Title:  President

000326