JS 44 (Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

BETTE J. RIVARD, as Administratrix of the Estate of JOHN A. HORTON

## DEFENDANTS

THOMAS M. HODGSON, individually and as he is the Bristol County Sheriff, GLEN H. STURGEON, individually and as he is Deputy Superintendent of the Bristol County House of Correction, PRISON HEALTH SERVICES, INC., PETER BERTHIAUME and SUSAN ANDREWS

**(b)** County of Residence of First Listed Plaintiff: **Bristol**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed: **Bristol**
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Robert M. Proulx
**Proulx Law Associates, P.C.**
170 High Street, Suite 301
Taunton, Massachusetts 02780-3536
Phone: 508.823.6441  Facsimile: 508.823.6443

Andrew M. Fischer
Jason & Fischer
47 Winter Street, 4th Floor
Boston, MA 02108
Phone: 617.423.7904  Facsimile: 617.451.3413

Attorneys (If Known)

Mary Eiro-Bartevyan
Koufman & Frederick, LLP
265 Essex Street, Suite 301
Salem, MA 01970

Regina Ryan
Merrick, Louison & Costello, LLP
67 BatteryMarch Street
Boston, MA 02110

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury— Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / ☐ 365 Personal Injury — Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC |  | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine / **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability / ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 371 Truth in Lending | ☐ 690 Other |  | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability |  | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** |  | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate Sentence Habeas Corpus: | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations / ☐ 530 General |  | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare / ☐ 535 Death Penalty | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |  |
| ☐ 245 Tort Product Liability | ☒ 440 Other Civil Rights / ☐ 540 Mandamus & Other | ☐ 791 Empl. Ret. Inc. Security Act |  | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property |  / ☐ 550 Civil Rights |  | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions |
|  |  / ☐ 555 Prison Condition |  |  |  |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
(Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

**42 U.S.C. § 1983 Wrongful death, failure to provide medical treatment to incarcerated prisoner which amounted to the deliberate indifference to John A. Horton's serious medical needs and cruel and unusual punishment.**

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ **2,000,000.00**
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE _____
DOCKET NUMBER _____

DATE _____    SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT #    AMOUNT    APPLYING IFP    JUDGE    MAG. JUDGE

JS 44 Reverse (Rev. 12/96)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS-44

Authority For Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.**     **(a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

  (b.) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

  (c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**     **Jurisdiction**. The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States, are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III.**     **Residence (citizenship) of Principal Parties.** This section of the JS-44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**     **Nature of Suit**. Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section IV below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.**     **Origin**. Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a) Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

**VI.**     **Cause of Action**. Report the civil statute directly related to the cause of action and give a brief description of the cause.

**VII.**     **Requested in Complaint**. Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**     **Related Cases**. This section of the JS-44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature**. Date and sign the civil cover sheet.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BETTE J. RIVARD, as Administratrix of the Estate of JOHN A. HORTON<br><br>       Plaintiff,<br><br>vs.<br><br>THOMAS M. HODGSON, individually and as he is the Bristol County Sheriff, GLEN H. STURGEON, individually and as he is Deputy Superintendent of the Bristol County House of Correction, PRISON HEALTH SERVICES, INC., PETER BERTHIAUME and SUSAN ANDREWS<br><br>       Defendants | Civil Action No.: **05 CA 11932 DPW**<br><br><br>**COMPLAINT AND DEMAND<br>FOR JURY TRIAL** |

## I. **PRELIMINARY STATEMENT**

Plaintiff by her attorneys, Proulx Law Associates, P.C., and Andrew M. Fischer, JASON & FISCHER, for her complaint, respectfully alleges:

1. This is an action for money damages arising under the Civil Rights Act of 1871, as amended, 42 U.S.C. § 1983, et seq., to recover:

   a. for 42 U.S.C. § 1983 Wrongful Death and the Massachusetts wrongful death statute;

   b. for monetary damages as a result of the wrongful death of John A. Horton;

   c. for failure to provide medical treatment on numerous occasions is the "deliberate indifference" to Mr. Horton's serious medical needs as defined by 42 U.S.C. § 1983;

   d. for great conscious pain and suffering that Mr. Horton was forced to endure before his death;

   e. for the loss of consortium of Mr. Horton's family members;

   f. for punitive monetary damages as a result of the wrongful death of John A. Horton;

    g. for monetary damages as a result of the negligent, arbitrary and capricious assessment of Mr. Horton's medical treatment and or condition;

    h. for monetary damages as a result of the harassment and civil rights violations;

    i. Such other and further relief as this Court may deem necessary and appropriate.

2. John A. Horton was a prisoner at the Bristol County House of Correction in Dartmouth serving a sentence of incarceration at all times pertinent hereto.

3. Bette J. Rivard is John Horton's mother and appointed as administratrix of Mr. Horton's estate.

4. The Plaintiff, Bette J. Rivard brings this civil rights action against the above named Defendants to recover damages for violation of John A. Horton's civil rights under the Eighth Amendment to the United States Constitution and under the laws of the Commonwealth of Massachusetts.

5. It is alleged that Defendant corrections employee(s)/officer(s) denied John A. Horton necessary medical attention.

6. It is alleged that when Defendant corrections employee(s)/officer(s) provided treatment to John Horton that the treatment provided was wholly inadequate.

7. It is alleged that John A. Horton was pronounced dead on or about September 29th, 2002.[1]

8. It is alleged that John A. Horton died from subacute encephalitis.[2]

9. It is alleged that Thomas Hodgson, Glen Sturgeon and Bristol County is liable for the actions of its' corrections employee(s)/officer(s) as the County maintained policies or

---

[1] See copy of death certificate. Attached hereto and made part hereof as **EXHIBIT A**

[2] See copy of autopsy report. Attached hereto and made part hereof as **EXHIBIT B**.

customs of deliberate indifference to the rights of citizens by failing to properly investigate allegations of misconduct by corrections employee(s)/officer(s), by failing to properly supervise corrections employee(s)/officer(s), and failing to properly train employee(s)/officer(s) and supervisors.

10. It is alleged that John A. Horton's illness remained untreated for a significant period of time prior to his death while he was incarcerated in The Bristol County House of Correction.

11. It is alleged that John A. Horton made repeated requests for medical attention and each of his requests for treatment were denied or that wholly inadequate treatment was provided.

12. It is alleged that Bristol County House of Corrections' employee(s)/officer(s) denied Mr. Horton medical treatment necessary to save his life.

13. It is alleged that the most basic proper medical treatment would have saved John Horton's life.

14. It is alleged that the denial of the necessary medical treatment for Mr. Horton's illness was the direct and proximate result of the said acts of the Defendants.

15. THOMAS M. HODGSON, individually and as he is the Bristol County Sheriff, Glen H. STURGEON, individually and as he is Deputy Superintendent of the Bristol County House of Correction, PRISON HEALTH SERVICES, INC., PETER BERTHIAUME and SUSAN ANDREWS are liable for the actions of its' corrections employee(s)/officer(s) as Bristol County and Bristol County corrections department maintained policies or customs of deliberate indifference to the rights of inmates by failing to provide medical care, failing to properly investigate allegations of misconduct by corrections employee(s)/officer(s), failing to properly supervise corrections employee(s)/officer(s), and failing to properly train corrections employee(s)/officer(s) and supervisors.

## II.    JURISDICTION

16. This action is brought pursuant to 42 U.S.C. § 1983 and 1988. Jurisdiction is established by 42 U.S.C. §§ 1331 and 1343. Plaintiff invokes the pendant jurisdiction of this Court to hear a state civil rights claim and state torts arising from the same cause of action.

## III.    PARTIES

17. John A. Horton was at all material times a resident of the City of Taunton, Bristol County, Massachusetts and a prisoner in the Bristol County House of Correction.

18. The Plaintiff, Bette J. Rivard, is the Administratrix of the estate of John A. Horton. Letters of Administration were granted to her by the Taunton Probate Court on or about 09/23/2004. She is a resident of the City of Taunton, Bristol County, Massachusetts.

19. Thomas M. Hodgson was the Bristol County Sheriff at all times pertinent hereto, and in that capacity is responsible for the operation of the Bristol County House of Correction. He is sued both individually and in his official capacity.

20. Glen H. Sturgeon was the Bristol County Deputy Superintendent at all times pertinent hereto, and in that capacity is responsible for the operation of the Bristol County House of Correction under Defendant Hodgson. Defendant Sturgeon is also sued both individually and in his official capacity.

21. Peter Berthiaume was an employee of the Bristol County Sheriff who was responsible for various prison services, including operation of the prison medical facility and related health care services for prisoners at the Bristol County House of Correction, under Defendant Hodgson. Defendant Berthiaume also is sued both individually and in his official capacity.

22. Susan Andrews is a physician who serves as the primary physician at the Bristol County jail who had direct dealings with John Horton while under the supervision of Defendants Hodgson and Sturgeon.

23. Prison Health Services, Inc. is a corporation that during all times pertinent hereto was under contract to provide medical services to prisoners at the Bristol County House of Correction, including the Plaintiff, John A. Horton, and was obliged, under that contract, to provide medical services to prisoners at the Bristol County House of Correction, including the Plaintiff, John A. Horton.

24. Defendant Thomas Hodgson and Bristol County House of Corrections was at all times material to this complaint a duly established corrections facility within the Commonwealth of Massachusetts and Bristol County.

25. Defendant employee corrections employee(s)/officer(s) were at all times material to this complaint duly appointed and acting member(s) of the Bristol County House of Correction.

26. Defendant corrections employee(s)/officer(s) were at all times material to this complaint duly appointed and acting member(s) of the Bristol County Corrections Department.

27. At all times material to this complaint the Defendants acted under color of law, to wit: under color of the statutes, ordinances, regulations, policies, customs, and usages of the Commonwealth of Massachusetts and/or Bristol County and the Bristol County Department of Corrections.

## IV.   FACTS

28. In or about July of 2002, John A. Horton while incarcerated at the Bristol County House of Correction began complaining that he was in need of medical treatment.

29. John A. Horton made several requests for medical treatment filing the necessary requests both orally and in writing.

30. Each request that Mr. Horton made for medical treatment prior to his death was either denied or not adequately addressed. This amounted to deliberate indifference to the plaintiff's health and well being.

31. The denial of proper medical treatment and deliberate indifference to the serious medical needs of Mr. Horton amounts to cruel and unusual punishment causing the unnecessary and wanton infliction of pain to Mr. Horton.

32. John A. Horton died on 09/29/2002.

33. The cause of death on the autopsy report is listed as "subacute encephalitis".[3]

34. As a direct and proximate result of the said acts of the Defendants John A. Horton suffered the following injuries and damages:
    a. Violation of his Constitutional rights under the Eighth Amendment to the United States Constitution against cruel and unusual punishment;
    b. Loss of his life;
    c. Physical pain and suffering and emotional trauma and suffering.

35. Plaintiff Bette J. Rivard suffered the untimely end of her relationship with her son, with the corresponding loss of his income, services, protection, care, assistance, society, companionship, comfort, guidance, counsel and advice, and was forced to incur funeral and burial expenses.

36. The actions or inactions of the Defendants violated the following clearly established and well settled federal constitutional rights of John A. Horton:
    a. The imposition of cruel and unusual punishment.
    b. The denial of reasonable and necessary medical care and treatment stemming from the defendants' deliberate indifference to the plaintiff's medical needs.

## COUNT I
### VIOLATION OF 42 U.S.C. § 1983-DENIAL OF MEDICAL TREATMENT THROUGH DELIBERATE INDIFFERENCE AND CRUEL AND UNUSUAL PUNISHMENT

37. Paragraphs 1 through 36 of this complaint are incorporated herein by reference as though fully set forth.

38. Defendants failed to provide medical treatment to the plaintiff, despite repeated requests for such treatment and the obvious need for medical treatment. This failure amounted to deliberate indifference to the plaintiff's health and medical needs in violation of his rights under the Eighth Amendment to the United States Constitution and the Massachusetts Declaration of Rights and also constituted cruel and unusual punishment, in violation of the Eighth Amendment to the Constitution and the Massachusetts Declaration of Rights.

39. Plaintiff Bette J. Rivard claims damages for the conscious pain and suffering, the wrongful death of John A. Horton, for her loss of his income, services, protection, care, assistance, society, companionship, comfort, guidance, counsel and advice, and for funeral and burial expenses under 42 U.S.C. § 1983 and the Massachusetts Wrongful Death Statute and for other damages.

## COUNT II
### SURVIVAL ACTION-AGAINST ALL DEFENDANTS.

40. Paragraphs 1 through 39 are incorporated herein by reference as though fully set forth.

41. John A. Horton was forced to endure great conscious pain and suffering, and to be attended by physicians and to incur expenses for such medical treatment, before his death.

42. John A. Horton filed no action during his lifetime, but under the laws of the Commonwealth of Massachusetts this action survives and may be asserted by his Estate.

43. Plaintiff Bette J. Rivard claims damages for the conscious pain and suffering and necessary medical and burial expenses incurred by John A. Horton, under 42 U.S.C. § 1983 the Massachusetts Wrongful Death Statute for these damages and for other damages.

---

[3] See copy of autopsy report. Attached hereto and made part hereof as **EXHIBIT B**.

# COUNT III
### 42 U.S.C. 1983 LIABILITY OF DEFENDANTS
### THOMAS HODGSON, GLEN STURGEON, BRISTOL COUNTY
### HOUSE OF CORRECTIONS AND ITS EMPLOYEES – PATTERN AND PRACTICE

44. Paragraphs 1 through 43 are incorporated herein by reference as though fully set forth.

45. Prior to September 29th, 2002, Defendant Thomas Hodgson, Glen Sturgeon, Peter Berthiaume, Bristol County House of Corrections, PHS and Susan Andrews developed and maintained policies or customs exhibiting deliberate indifference to the medical needs and other constitutional rights of persons in the Bristol County House of Correction which caused the deprivation of John A. Horton's constitutional rights.

46. It was the policy or custom of the Thomas Hodgson, Glen Sturgeon, Peter Berthiaume and Bristol County House of Corrections to investigate citizen/inmate complaints and complaints of employee(s)/officer(s) misconduct inadequately and improperly.

47. The Defendants Thomas Hodgson, Glen Sturgeon, Peter Berthiaume and Bristol County House of Corrections had a policy or custom of failing to properly supervise employee(s)/officer(s).

48. The Defendants Thomas Hodgson, Glen Sturgeon, Peter Berthiaume and Bristol County House of Corrections was grossly negligent to the point of deliberate indifference to citizen's rights in failing to supervise and discipline employee(s)/officer(s) such as the Defendants for their misconduct so as to deter such conduct.

49. Though these policies and practices, the Defendants Thomas Hodgson, Glen Sturgeon, Peter Berthiaume and Bristol County House of Corrections were grossly negligent to the point of exhibiting deliberate indifference to well established constitutional rights of John A. Horton.

50. This deliberate indifference caused injury and death to the plaintiff through the above-described policies, as the consequence of their failure to provide medical treatment was foreseeable.

51. The above policies and customs of the Defendants Thomas Hodgson, Glen Sturgeon and Bristol County House of Corrections were the moving force behind the acts of the Defendants as described above and caused John A. Horton's injuries as described above.

## COUNT IV
### MASSACHUSETTS WRONGFUL DEATH STATUTE, M.G.L. C. 229 § 2 AGAINST ALL DEFENDANTS.

52. Paragraphs 1 through 51 are incorporated herein by reference as though fully set forth.

53. The acts and omissions of the defendants constituted negligence, pursuant to M.G.L. c. 229 by failing to provide necessary medical treatment that would have saved John Horton's life.

54. As a direct and proximate result of the violations of M.G.L. c. 229 § 2, the Plaintiff suffered injuries and damages, including the injuries and damages described above.

## COUNT V
### NEGLIGENCE, HEALTH CARE PROVIDERS

55. Paragraphs 1 through 54 are incorporated herein by reference as though fully set forth.

56. Defendant Prison Health Services, Inc., and its employee, Doctor Susan Andrews, pursuant to a contract to provide health services to the Bristol County House of Corrections and Jail, owed a duty to provide adequate medical services to John Horton and that duty was breached by the Defendants' failure to provide adequate and timely medical care to John Horton.

57. This breach of duty directly caused John Horton injury, damages and his eventual death.

58. As a direct and proximate result, John Horton's injuries were severely aggravated, John Horton suffered physical injury and pain and suffering, suffered great anxiety and strain, was caused great emotional distress, was subject to great humiliation eventually his death.

WHEREFORE, the Plaintiff requests that this Court:

a. Award compensatory damages against the Defendants;

b. Award punitive damages against Defendants;

c. Award the costs of this action, including attorney's fees, to the Plaintiff; and

d. Award such other and further relief as this Court may deem necessary and appropriate.

Dated this the 23rd day of September, 2005.

                PLAINTIFF,
                By her Attorneys,

*[signature: Robert M. Proulx, Esq.]*

Robert M. Proulx, Esquire
**Proulx Law Associates, P.C.**
*Attorneys at Law*
170 High Street, Suite 301
Taunton, Massachusetts 02780-3536
Phone: (508) 823-6441
Fax:    (508) 823-6443
BBO# 640653

_____
Andrew M. Fischer, Esquire
Jason & Fischer
47 Winter Street, #4
Boston, Massachusetts 02108
Phone: (617) 423-7904
BBO# 167040

**THE PLAINTIFF DEMANDS A TRIAL BY JURY IN THE DISTRICT COURT.**

    Dated this the 23rd day of September, 2005.

    PLAINTIFF,
    By her Attorneys,

*signature*

Robert M. Proulx, Esquire
**Proulx Law Associates, P.C.**
*Attorneys at Law*
170 High Street, Suite 301
Taunton, Massachusetts 02780-3536
Phone: (508) 823-6441
Fax:   (508) 823-6443
BBO# 640653


Andrew M. Fischer, Esquire
Jason & Fischer
47 Winter Street, #4
Boston, Massachusetts 02108
Phone: (617) 423-7904
BBO# 167040

# The Commonwealth of Massachusetts
## STANDARD CERTIFICATE OF DEATH
### REGISTRY OF VITAL RECORDS AND STATISTICS

**Registered Number:** 1245

| Field | Value |
|---|---|
| Decedent Name (First, Middle, Last) | John Albert Horton |
| Sex | M |
| Date of Death | Sept. 29, 2002 |
| Place of Death (City/Town) | New Bedford |
| County of Death | Bristol |
| Hospital or Other Institution | St. Lukes Hospital |
| Place of Death | Hospital: Inpatient |
| Social Security Number | 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 |
| US War Veteran | -- |
| Hispanic Origin | No |
| Race | White |
| Decedent's Education | 12 |
| Age - Last Birthday (Yrs) | 33 |
| Date of Birth | Oct. 26, 1968 |
| Birthplace | Taunton, MA |
| Married/Never Married/Widowed or Divorced | Never Married |
| Last Spouse | None |
| Usual Occupation | Landscaper |
| Kind of Business or Industry | Landscaping |
| Residence | 86 Alfred Lord Blvd., Taunton, Bristol, MA |
| Zip Code | 02780 |
| Father - Full Name | George Horton |
| State of Birth (Father) | MA |
| Mother - Name (Given)(Maiden) | Bette Rivard |
| State of Birth (Mother) | MA |
| Informant's Name | Melanie Donovan |
| Mailing Address | 19 Rosemont Rd., Weymouth, MA 02188 |
| Relationship | Aunt |
| Method of Immediate Disposition | Cremation |
| Funeral Service Licensee | J. Kevin Corbett |
| License # | 5448 |
| Place of Disposition | Woodlawn North Purchase |
| Location | Attleboro, MA |
| Date of Disposition | October 3, 2002 |
| Name and Address of Facility | Taunton Funeral Home, 8 Crapo St., Taunton, MA 02780 |

**29 PART I - Cause of Death:**
a. Subacute encephalitis. — Approximate Interval Between Onset and Death: Unknown

**Was Autopsy Performed?** Yes
**Were Autopsy Findings Available Prior to Completion of Cause of Death?** Yes
**Med. Exam. Notified?** Yes
**Manner of Death:** Natural

**Signature (Medical Examiner):** [signature]
**Date Signed:** October 21, 2002
**Hour of Death:** 6:20 p.
**Pronounced Dead:** September 29, 2002, 6:20 p.

**Name and Address of Certifying Physician:** George Kury, M.D., 870 County Road, Pocasset, MA 02559
**License No. of Certifier:** 28266

**Was There a Pronouncement Form?** No
**Date Burial Permit Issued:** October 1, 2002, 961
**Signature of Health Agent:** Ann L. Cottrill, RN
**Received in the City/Town of:** New Bedford
**Acting Clerk's Signature:** Rita D. Arruda
**Date of Record:** Oct. 23, 2002

MAR 15 2004

Date Issued ____
A TRUE COPY ATTEST

[signature: Rita D. Arruda]
CITY CLERK - NEW BEDFORD, MA

**EXHIBIT A**



# Commonwealth of Massachusetts

# OFFICE OF THE CHIEF MEDICAL EXAMINER

**Postmortem examination Report**

Postmortem examination report Status: Final        CaseNumber: 20023007

**Name:** JOHN HORTON        **Age:** 33        **Race:** WHITE        **Gender:** MALE

**Address:** HOUSE OF CORRECTIONS/DARTMOUTH, DARTMOUTH

**Date of Death:**                Sunday, September 29, 2002

**Date of autopsy:**              Tuesday, October 01, 2002

**Cause of death:** Subacute encephalitis.

**Other Conditions:**

**Manner of Death:** Natural

**Signature:** _[signature]_
Pathologist        Kury, George MD

**EXHIBIT B**

### HISTORY:

John Horton, 33 years old, an inmate of the House of Correction, Dartmouth, MA, was found unresponsive in his room. He was transported to the St. Luke's Hospital, New Bedford, MA. CT scan revealed cerebral edema with cerebellar herniation, enlargement of all cerebral ventricles and a focal area of low density in the right temporal lobe anteriorly. He expired within 24 hours after admission and was pronounced dead at 6:20 p.m. on September 29, 2002.

Past medical history: Mr. Horton was known to be HIV positive for several years.

### AUTOPSY:

The postmortem examination was performed at the Office of the Chief Medical Examiner, located at 870 County Road, Pocasset, Massachusetts on October 1, 2002 starting at 11:00 a.m.

Authority: Dr. George Kury, Medical Examiner and Pathologist.

### Present and Assisting During the Procedure:

Police Present: Trooper Patricia Beehan, Crime Scene Investigations of the Massachusetts State Police.

Witness during autopsy: Paul Talusan, Medical Examiner technician.

### Evidence of Treatment:

There is an ET tube in place. There are IV catheters in the left antecubital fossa and in the left forearm.

### Identifying Marks:

There is a 9 cm long vertical lower midline abdominal scar.

There is a tattoo on the lateral aspect of the left upper arm depicting a head with a hat. There is a tattoo of a dollar sign on the dorsum of the right hand.

### Identification:

The body was identified in the autopsy room by affixed name tags.

### EXTERNAL EXAMINATION:

The body is that of a well developed, normal white male. The body build is large. The apparent age of 33 years corresponds with the recorded age of 33 years. The body length is 74 inches. Nutritional status is average. The estimated body weight is 190 pounds. The preservation of the body is good. The body is not embalmed.

Hair: The hairline is normal. The head hair is brown, straight and measures about 0.2 cm in average length. The sideburns are continuous with a short full beard and mustache. The body hair is plentiful.

Scalp: Unremarkable.

Ears: Unremarkable.

Eyes: The eyes are closed. The corneas are slightly cloudy. The irides are brown, the pupils are round and equal measuring 0.2 cm in diameter each.

Nose: Unremarkable.

Mouth: Unremarkable.

Teeth: Edentulous. No upper and lower teeth are present.

Face: Unremarkable.

Neck: Straight and unremarkable.

Pectorals and breasts: Symmetrical.

Abdomen: Flat.

**EXHIBIT B**

Limbs: Equally and symmetrically developed.

Genitalia: Uncircumcised male.

Back and buttocks: Unremarkable. No traumatic injuries are seen.

### Rigidity:
Postmortem rigidity is full and well developed.

### Lividity:
Postmortem lividity is developed on the back.

## EVIDENCE OF TRAUMA:
None.

## INTERNAL EXAMINATION:
The body is opened with the usual Y-shaped incision. The subcutaneous fat measures 2 cm in thickness at the level of the umbilicus.

### Heart:
The heart weighs 390 grams. The coronary arteries are widely patent and free of arteriosclerosis. All cardiac chambers are normal in size. The left ventricular wall measures 1.4 cm and the right 0.3 cm in thickness. The heart valves are unremarkable. The myocardium is brown, moderately firm and grossly unremarkable. The pericardium is unremarkable. The aorta and its major branches are grossly unremarkable.

### Lungs:
The left lung weighs 590 and the right 910 grams. The pleural surfaces are pink-blue, smooth and glistening. Sections reveal pulmonary edema and congestion. The upper airways and pulmonary vessels are unremarkable. The pleural cavities are unremarkable.

### .ver:
The liver weighs 2120 grams. The liver shows moderate generalized enlargement. The hepatic configuration is normal. The external surface is brown, smooth and glistening. On section, the liver parenchyma is brown, moderately firm. No focal lesion is seen. The gallbladder and extrahepatic bile ducts are grossly unremarkable. There are many markedly enlarged lymph nodes in the perihilar area. The lymph nodes measure up to 3 cm in diameter. The peritoneal cavity is unremarkable.

### Spleen:
The spleen weighs 300 grams. The spleen shows moderate generalized enlargement. The external surface is gray-blue, smooth. On section, the spleen is moderately congested. No focal lesion is noted.

Lymph nodes: The lymph nodes on the right and left lateral sides of the neck are moderately enlarged. The perihilar lymph nodes are markedly enlarged, as described above.

### Urinary tract:
The left kidney weighs 160 and the right 170 grams. The kidneys are normal in size and configuration. The external surfaces, cortex, medulla, pelves and ureters are grossly unremarkable. The urinary bladder is unremarkable. No urine is found.

### Adrenals:
Unremarkable. No edema or hemorrhage is noted.

### Gastrointestinal Tract:
The esophagus and small and large intestines are unremarkable.

The gastric lumen is empty. The gastric mucosa is grossly unremarkable.

The pancreas is normal in size, configuration and on sectioning.

### ternal Genitalia:
Unremarkable.

### Neck:
The neck organs are dissected and show no evidence of fracture, hemorrhage or scarring.

**EXHIBIT B**

The thyroid gland is normal in size, configuration and on sectioning.

**Scalp:**
Unremarkable.

**Brain:**
The brain weighs 1570 grams. There is severe cerebral edema with cerebellar herniation. The brain is cut in half shortly after removal. There is severe hydrocephalus involving the lateral, third and fourth ventricles. Neuropathology report to follow.

**TOXICOLOGY:**
Postmortem blood is submitted for toxicological examination.

**HISTOLOGY:**
None.

**FINDINGS:**

I. Subacute encephalitis with marked dilatation of all cerebral ventricles.

II. Severe cerebral edema with cerebellar herniation.

III. History of HIV infection.

IV. Cervical and abdominal lymphadenopathy.

V. Hepatomegaly, moderate.

VI. Congestive splenomegaly, moderate.

**OPINION:**
It is the opinion of the undersigned, based upon the history as provided by the Office of the Chief Medical Examiner, Pocasset, MA together with the autopsy findings that John Horton died as a result of subacute encephalitis. The manner of death is natural.

**NEUROPATHOLOGY EXAMINATION**

The fresh brain weighs 1570 grams. There is severe cerebral edema with cerebellar herniation. The dura is unremarkable and the leptomeninges are thin and glistening without evidence of subarachnoid hemorrhage or purulent exudate. The anatomy of the cerebral circulation is within normal limits. There is no arteriosclerosis of the cerebral arteries and there is no evidence of occlusions or emboli. The cranial nerves are unremarkable. The brain is cut after formalin fixation in the frontal plane. There is a marked dilatation of the lateral, third and fourth ventricles. The brain is symmetric and there is no evidence of masses, infarcts, hemorrhage or other focal lesions. Beside the cerebellar herniation, the cerebellum and brain stem are unremarkable. Multiple sections of the cerebral hemisphere and cerebellum are submitted for microscopic examination.

MICROSCOPIC EXAMINATION: Examination reveals extensive perivascular infiltrate in the white matter. The perivascular infiltrate consists mainly of mononuclear cells (macrophages, plasma cells and lymphocytes) and scattered neutrophilic leukocytes. There is a subependymal inflammation present. Scattered microglial nodules and reactive gliosis are noted.

FINAL NEUROPATHOLOGIC DIAGNOSIS:

I. Subacute encephalitis with marked dilatation of all cerebral ventricles.

II. Severe cerebral edema with cerebellar herniation.

NOTE: The decedent was known to be HIV positive for several years.

**EXHIBIT B**

```
UMASS MEMORIAL MEDICAL CENTER                          LABORATORY REPORTS
ONE BIOTECH PARK, 365 PLANTATION ST, SUITE 200  WORCESTER,MA 01605-2376
L. Michael Snyder, MD  Director, Laboratories, UMMMC                PAGE 1
RUN ON: 11/11/02  1057            TYPE OF REPORT:   Doctor Report
 N FOR: 10/11/02-11/11/02         REPORT GENERATED AT UNIVERSITY CAMPUS

PATIENT:  CASE,CME02-3007                    MR#:            PHONE:

LOCATION    AGE  SEX   PHYSICIAN NAME             ACCOUNT #     STATUS    REG DATE
XX-CMEC     33   M     KURY,GEORGE MD             XX000013696   REG REF   10/22/02
DOB:

ADM COMMENTS:  J.HORTEN

SPEC #: 1022:F00008R    12812717   STATUS: COMP   COLL: 10/22/02-UNK   RECD: 10/22/02-1400

ORDERED:   CDAO, SOLVENT SCR,OTH
```

| Test | Result | Flag | Reference |
|---|---|---|---|
| > SPECIMEN TYPE | BLOOD | | |
| | FLUORIDATED -NO SITE INDICATED | | |
| > BARBITURATE SCREEN | None detected.  This is the result of a qualitative immunoassay screening test for barbiturates. CUTOFF CONCENTRATION = 100 ng/mL Secobarbital | | |
| > BARBITURATE CONFIRMATION | Test not performed | | |
| > COCAINE METABOLITE SCREEN | None detected.  This is the result of a qualitative immunoassay screening test for cocaine metabolites. CUTOFF CONCENTRATION = 100 ng/mL Benzoylecgonine | | |
| COCAINE CONFIRMATION | | | |
| > COCAINE METABOLITE CONFIRM | Test not performed | | |
| > OPIATE GROUP SCREEN | None detected.  This is the result of a qualitative immunoassay screening test for morphine/codeine. CUTOFF CONCENTRATION = 100 ng/mL Morphine | | |
| OPIATE CONFIRMATION | | | |
| > OPIATE CONFIRMATION | Test not performed | | |
| > BENZODIAZEPINES SCREEN | None detected.  This is the result of a qualitative immunoassay screening test for nordiazepam. CUTOFF CONCENTRATION = 200 ng/mL Oxazepam | | |
| > METHANOL | NON-DETECTABLE | gm% | |
| > ETHANOL | NON-DETECTABLE | gm% | |
| > ISOPROPANOL FORENSIC | NON-DETECTABLE | GM% | |
| > ACETONE | NON-DETECTABLE | gm% | |

H = High   L = Low   N = Normal   # = Delta

** END OF REPORT **

**EXHIBIT B**